Deepali A. Brahmbhatt (SBN 255646)
Email: dbrahmbhatt@devlinlawfirm.com
DEVLIN LAW FIRM LLC
3120 Scott Blvd. #13,
Santa Clara, CA 95054
Telephone:   (650) 254-9805

Timothy Devlin (*pro hac vice* pending)
Email: tdevlin@devlinlawfirm.com
Robert Kiddie (*pro hac vice* pending)
Email: rkiddie@devlinlawfirm.com
Robyn Williams (*pro hac vice* pending)
Email: rwilliams@devlinlawfirm.com
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

*Attorneys for Plaintiff,*
*Catherine Foster, on behalf of herself*
*and all others similarly situated*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| Catherine Foster, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Ring, LLC, a Delaware limited liability corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DATA BREACH**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiff, Catherine Foster ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Defendant Ring LLC ("Ring" or "Defendant"), and alleges the following:

## I.    INTRODUCTION

1.    This action addresses Ring's egregious failure to provide the safety and security it ostensibly promises its customers and to respect the most fundamental of its customers' autonomy and privacy rights—the right to privacy in one's home—and the very principles upon which the company was purportedly built.

2.    Ring markets and sells home security remote-access cameras and appurtenant software (collectively, "devices"). Intended for use in and around the home, Ring's devices feature motion-activated cameras; a "live view" that allows users to "check in on" their homes remotely; and a two-way talk feature that allows users to communicate through the devices. According to Ring, its home security devices offer "smart security here, there, everywhere." Ring promises users that it takes cybersecurity seriously and will safeguard users' private information.

3.    Despite Ring expressly promising to provide its customers with "peace of mind" and to put its customers' "security first," its devices actually expose the most intimate areas of customers' homes—and consequently the most private aspects of customers' lives—to unauthorized third parties through its deliberately inadequate security measures that allows hackers to invade and terrorize their homes. Ring has failed to protect consumers against ill-meaning hackers despite the fact that it had been on notice of the inadequacies of its cybersecurity because of previous breach incidents.

4.    Instead of helping families protect their homes, Ring's devices—which were plagued with cyber-security vulnerabilities—have provided hackers a wide-open back door to enter the very homes the devices were supposed to protect. These simple vulnerabilities permit vicious criminals to hack into Ring devices and

potentially their home networks. Based on the in-built vulnerabilities in the Ring devices, Plaintiff is at a high risk of injury based on hacking or data breach.

5.    Furthermore, Ring actively shared users' sensitive personal identifying information ("PII") with third parties without first obtaining users' authorization or consent. This sensitive data allows third parties to build comprehensive and unique digital fingerprints to track consumer behavior and engage in surveillance behind the walls of one's private home, further enriching both Ring and the third parties.

6.    Ring continues to sell to the public devices that are not secure and are prone to hacking, while promising consumers "peace of mind" and safety despite continuing to affirmatively share its customers' PII with third parties without their clear, informed consent.

7.    Plaintiff brings this lawsuit to hold Ring responsible for selling defective, dangerous devices and proliferating misrepresentations, and to prevent the public from being similarly harmed in the future. Plaintiff requests that the Court order Ring to take all necessary measures to secure the privacy of user accounts and devices, to stop sharing customers' PII with third parties without their clear, informed consent, and to compensate Plaintiff and the Class members for the damage that Ring's acts and omissions have caused.

8.    Plaintiff intends to ask the Court to certify a Class under Rule 23(b)(2) and 23(b)(3) on behalf of all persons in the United States who purchased Ring's defective devices and insecure services and/or created an account for use of such devices (the "Purchaser/Accountholder Class") and is at a significant risk of harm through hacking, data breach and unauthorized sharing of PII.

## II.    **THE PARTIES**

9.    Plaintiff Catherine Foster is a resident and citizen of Massachusetts and is a member of the Purchaser/Accountholder Class.

10.    Defendant Ring LLC is a Delaware is a limited liability company with its principal lace of business in Santa Monica, California.

**CLASS ACTION COMPLAINT**

### III.   JURISDICTION AND VENUE

11.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and members of the Class are citizens of different states from Ring.

12.     This Court has personal jurisdiction over Ring because it maintains headquarters in this District and operates in this District. Through its business operations in this District, Ring intentionally avails itself of the markets within this District to render the exercise of jurisdiction by this Court just and proper.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because significant events giving rise to this case took place in this District, and because Ring is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

### IV.   BACKGROUND

14.     Several of its user accounts and devices were hacked, putting Ring on notice that its service and devices had serious security vulnerabilities.  The very purpose of the device and service was to provide security.  The existing security vulnerabilities make a user account or device from Ring more likely at risk to be hacked or data breached.  Such security risks take away from any benefits Ring products or services provide.

15.     To date, Ring's tardy updates are still insufficient to protect their consumers' privacy and security going forward. There is no indication that Ring has addressed gaping security holes like Ring's leaving their devices vulnerable to brute force attacks and credential stuffing, failure to limit the number of failed login attempts, or Ring's failure to conduct basic IP detection to warn a customer that someone is attempting to login to their account from multiple different geographic locations at the same time. There is also no indication that Ring plans to require

---

3

**CLASS ACTION COMPLAINT**

customers to use strong passwords or will prevent them from using passwords that are known to be exposed from previous data breaches.

16.     Not only did Ring fail to protect Plaintiff's Ring account in adopting substandard security and privacy protocols, it also violated their customers' privacy by affirmatively sharing PII with third parties without authorization or consent.

17.     After widespread reporting on the Ring hacks, an investigation by the Electronic Frontier Foundation ("EFF"), a nonprofit organization that educates consumers on privacy matters, found that the Ring app integrated multiple third-party trackers[1].  This unauthorized release further exposed customers to privacy violations by sharing their PII with third parties and increasing the risk of unauthorized access.

18.     Among the information shared with these third parties were customers' names, private IP addresses, mobile network carriers, persistent identifiers, and sensor data on the devices of Ring's customers.  Ring could remove the personal identifiers in user data before sending it to third parties, but it does not.

19.     Ring thus allows third parties to track its customers on a granular level, without meaningful user notification or consent and, in most cases, with no way to mitigate the damage done. Persistent identifiers and device information are often sent upon app install, and thus before the user has even had the opportunity to view and accept the terms and conditions.

20.     The danger in sending even small bits of information, such as device specifications, and an advertising ID, anonymous ID, or fingerprint ID, is that analytics and tracking companies are able to combine these bits together to form a unique picture of the user's device (mobile phone or computer), and thus create a fingerprint that follows the user as they interact with other apps and use their device, in essence providing the ability to spy on what a user is doing in their daily lives, in

---

[1] Bill Budington, Ring Doorbell App Packed with Third-Party Trackers, Electronic Frontier Foundation (Jan. 27, 2020), <https://www.eff.org/deeplinks/2020/01/ringdoorbell-app-packed-third-party-trackers>.

**CLASS ACTION COMPLAINT**

their home, and precisely when they are doing it. This data detailing user behavior is linked into a profile resulting in broad yet near perfect surveillance of practically all of someone's interests, identities, and daily routines. The information Ring's app and website sends to third-party servers at a minimum would allow third parties to know when Ring users are at home or away.

21.     This information is used to build precise and detailed profiles on individuals, ultimately identifying characteristics such as race, age, sexual orientation, relationship status, socioeconomic status, parental status, and much more.  Social media sites and operating systems or apps on Mobile devices can exploit this indirect data collection practices, in particular rely on apps to autonomously collect and send information about app usage to the social network without telling users about the arrangement.

22.     Obtaining data on and from a device, including the transmission of data linked to a unique identifier from an app to third parties, constitutes the processing of personal data. Data relating to the use of specific apps, including usage logs, from which an individual is directly or indirectly identifiable is also personal data.

23.     Data harvesting is the fastest growing industry in the U.S. As software, data mining, and targeting technologies have advanced, the revenue from digital ads and the consequent value of the data used to target them have risen rapidly.  On information and belief, Ring continues to integrate a sweeping combination of third party "analytics tools" and trackers that require collection of PII to serve its own selfish purpose of monetization.

24.     Plaintiff Catherine Foster purchased Ring Camera before September 8, 2019 and started her subscription service on that date.  She stopped ring protection plan on November 24, 2020.  By purchasing Ring device and using the service in the past, she has put herself and her household at a significant risk of hacking, data breach and unauthorized dissemination of her and her family's PII.

**CLASS ACTION COMPLAINT**

25.     Because Plaintiff Foster has canceled her subscription service, she is no longer subject to the terms of her subscription service including arbitration. She continues to use her Ring camera and view live streaming.

26.     Unlike other companies that use online accounts, as of the dates the Plaintiff purchased their Ring devices, Ring did not require basic, industry-standard measures to protect the security of users' accounts. And instead of following any industry standard practices or providing customers clear channels of remediation, Ring places the blame for the data breach on their own users.

## V.     CLASS ALLEGATIONS

27.     Pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3), Purchaser/Accountholder Plaintiff, individually and on behalf of all others similarly situated, bring this lawsuit on behalf of themselves and as a class action on behalf of the following Class:

> **Purchaser/Accountholder Class:** All persons who purchased a Ring security device of any kind from Ring LLC and/or created a Ring account during the applicable limitations period from the state of Massachusetts and nationwide.

28.     Excluded from the Class are any entities, including Ring, and Ring's officers, agents, and employees. Also excluded from the Class are counsel for Plaintiff, any judicial officer presiding over this matter, members of their immediate family, members of their judicial staff, and any judge sitting in the presiding court system who may hear an appeal of any judgment entered.

29.     Members of the Class are so numerous that joinder is impracticable. While the exact number of members of Class is unknown to Plaintiff, it is believed that each Class is comprised of dozens, if not thousands, of members.

30.     Common questions of law and fact exist as to all members of the Class. These questions predominate over questions that may affect only individual class

6

members because Ring has acted on grounds generally applicable to the Class. Such common and legal factual questions for the Class include:

    a. Whether Ring violated Plaintiff's and Class Members' privacy rights;

    b. Whether Ring failed to safeguard adequately Plaintiff's and Class Members' property, including their private and personal information;

    c. Whether Ring's collection and storage of Plaintiff's and Class Members' private and personal information in the manner alleged herein violated federal, state, and local laws, or industry standards;

    d. Whether Ring's disclosure of Plaintiff's and Class Members' private and personal information in the manner alleged herein violated federal, state, and local laws, or industry standards;

    e. Whether Ring acted negligently;

    f. Whether Plaintiff and the Class Members were harmed;

    g. Whether Ring and Plaintiff formed implied contracts;

    h. Whether Ring breached implied contracts with Plaintiff and the Class Members;

    i. Whether Ring's conduct was unfair;

    j. Whether Ring's conduct was fraudulent;

    k. Whether Plaintiff and the Class members are entitled to equitable relief, including, but not limited to, injunctive relief, restitution, and disgorgement; and

    l. Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

    31.    Plaintiff's claims are typical of the members of the Class as all members of the Class are similarly affected by the Ring's actionable conduct. Ring's conduct

**CLASS ACTION COMPLAINT**

that gave rise to the claims of Plaintiff and members of the Class is the same for all members of the Class.

32.     Plaintiff will fairly and adequately protect the interests of the Class because they have no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation, including data privacy litigation.

33.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

34.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

35.     Ring has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

36.     Plaintiff suffers a substantial and imminent risk of repeated injury in the future.

37.     California law applies to the claims of all members of the Class.

38.     The State of California has sufficient contacts to Ring's relevant conduct for California law to be uniformly applied to the claims of the Class. Application of California law to all relevant Class Member transactions comports with the Due

8

**CLASS ACTION COMPLAINT**

Process Clause given the significant aggregation of contacts between Ring's conduct and California.

39.     Ring is headquartered and does substantial business in California.

40.     A significant percentage of the Class Members are located in, and Ring aimed a significant portion of its unlawful conduct at, California.

41.     The conduct that forms the basis for each Class Member's claims against Ring emanated from Ring's headquarters in Santa Monica, California, including Ring's misrepresentations and omissions regarding security and decisions to implement substandard security practices as alleged herein.

42.     California has a greater interest than any other state in applying its law to the claims at issue in this case. California has a very strong interest in preventing its resident corporations from engaging in unfair and deceptive conduct and in ensuring that harm inflicted on resident consumers is redressed. California's interest in preventing unlawful corporate behavior occurring in California substantially outweighs any interest of any other state in denying recovery to its residents injured by an out-of-state defendant or in applying its laws to conduct occurring outside its borders. If other states' laws were applied to Class Members' claims, California's interest in deterring resident corporations from committing unfair and deceptive practices would be impaired.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
**(On behalf of Plaintiff and the Class Members)**

43.     Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through set forth above as if fully written herein.

44.     Ring owed Plaintiff and the members of the Class a duty to exercise reasonable care in safeguarding and protecting access to their Ring accounts and

9

**CLASS ACTION COMPLAINT**

keeping them from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

45. This duty included, among other things, designing, maintaining, and testing security systems to ensure that users' account information is adequately secured and protected. Ring's duty to Plaintiff and the members of Class arose from the sensitivity of the information and privacy rights that Ring's devices were designed to secure and protect. This duty further arose because Ring affirmatively designed, developed, maintained, and provided the Ring products and services to its customers, who were the foreseeable victims of negligence in the design, development, and maintenance of Ring's products and services.

46. Ring's duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable data security measures to protect consumers. Various FTC publications and data security breach orders further form the basis of Luxottica's duties. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty. The harm that has occurred is the type of harm the FTC Act (and similar state statutes) were intended to guard against.

47. Ring breached its duty to Plaintiff and the members of Class when it allowed unauthorized users to access their accounts, when it failed to implement and maintain reasonable security protections and protocols, and when it knowingly shared and/or sold customers' PII to third parties for analytics and marketing purposes without adequate disclosure to and consent from its customers.

48. Ring, a sophisticated tech company, knows what the industry-standard security practices are, but chose not to implement them.

49. As a result of Ring's breaches, several of the Class members suffered serious injuries when unauthorized third parties were able to access their Ring

**CLASS ACTION COMPLAINT**

accounts. And Plaintiff and other Class members are at a significant risk to suffer injury due to Ring's breaches because they incurred expense associated with purchasing, installing, creating accounts for, and using the insecure devices in and around their homes.

50.     It was entirely foreseeable to Ring that Plaintiff and the members of Class would be harmed if it failed to adequately safeguard access to their Ring accounts and security devices. Failure to protect their Ring accounts and access to their security devices was likely to result in injury to Plaintiff and members of the Class because hackers could gain unauthorized access to private information about their lives, spy on them, harass them, threaten them, endanger them, and commit financial fraud or theft using information learned through the unauthorized access.

51.     There is a close connection between Ring's failure to adequately safeguard access to the Ring accounts of the members of the Class and the injuries suffered by them.

52.     But for Ring's acts and omissions in maintaining inadequate security, and allowing hackers to gain access to customer accounts, the Accountholder/Purchaser Plaintiff and Class Members' devices would not be put at a significant risk of getting hacked, their homes spied on, and loved ones harassed. This close connection is further reinforced by the broader general evidence of hacks of others' Ring devices occurring around the same time period.

53.     Further, but for Ring's disclosure and/or sale of PII to third parties for analytics and marketing purposes without disclosure and consent, the Accountholder/Purchaser Plaintiff's and the Accountholder/Purchaser Class Members' PII and privacy rights would not have been compromised.

54.     Aware of the vulnerability of its customers, and the sensitive nature of the information available to anyone who watches an indoor camera security feed, Ring has not taken sufficient actions to prevent hackers from gaining unauthorized access. Ring was aware of the problems with its security systems and that they were

11

**CLASS ACTION COMPLAINT**

vulnerable to intrusion by hackers, because these issues were widely covered in the media. There was even a podcast dedicated to entertaining subscribers by hacking and harassing Ring customers through their devices. But even though Ring was aware of the vulnerability of its customers to being hacked through its accounts and devices, Ring failed to cure those vulnerabilities or protect its customers' accounts.

55.    Plaintiff and members of the Class enjoy a special relationship with Ring. Ring provided services to Plaintiff and members of the Class, including the ability to monitor their indoor security devices via their Ring accounts. The transactions between Ring and the members of the Class are intended to benefit the Plaintiff and members of the Class by providing them the ability to use the indoor devices for all of the purposes they expected and Ring intended.

56.    Plaintiff and members of the Class were harmed by Ring's failure to exercise reasonable care in safeguarding their account information, and that harm was reasonably foreseeable.

**COUNT II**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**(Or its equivalent in states nationwide and on behalf of Plaintiff and Class Members)**

57.    Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through set forth above as if fully written herein.

58.    Plaintiff has standing to pursue this cause of action because Plaintiff was placed at and is at a significant risk of suffering injury in fact and lost money as a result of Ring's misconduct described herein.

59.    As described herein, Ring advertised their products and services as enhancing security and safety, but in fact provided products and services that were highly vulnerable to hacking and that worsened the safety and security of Plaintiff and the members of the Class.

**CLASS ACTION COMPLAINT**

60.    Plaintiff would continue using her Ring products and services if they could be assured that Ring would take adequate security measures to protect the security of their accounts and devices going forward.

61.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200. Ring has engaged in business acts and practices that, as alleged above, constitute unfair competition in violation of Business and Professions Code section 17200.

Unlawful

62.    Ring's business practices, as alleged herein, violate the "unlawful" prong because Ring violates Plaintiff's and Class Members' rights to privacy and state laws, including Article 1, Section 1 of the California Constitution, and the California Consumers Legal Remedies Act.

Unfair

63.    Ring's business practices, as alleged herein, violate the "unfair" prong of the UCL because they offend an established public policy and are immoral, unethical, and unscrupulous or substantially injurious to consumers.

64.    Plaintiff and members of the Class have a well-established right to privacy and well-established privacy interests in their homes and in their sensitive personal information. Ring's failure to implement and maintain adequate security protocols, and its disclosure and/or sale of customers PII to third parties without their permission or consent, violated those interests and substantially injured them.

65.    The reasons, justifications, or motives that Ring may offer for the acts and omissions described herein are outweighed by the gravity of harm to the victims. The injuries suffered by Plaintiff and members of the Class are substantial and are not outweighed by any countervailing benefits to consumers or competition.

Fraudulent

66. Ring's acts, as described herein, are "fraudulent" because they are likely to deceive the general public.

67. Ring's business practices described herein also violate the UCL because Ring falsely represented that goods or services have characteristics they do not have, namely, good security; falsely represented that its goods or services are of a particular standard when they are of another; advertised its goods and services with intent not to sell them as advertised; represented that the subject of a transaction was supplied in accordance with a previous representation when it was not; and/or made material omissions regarding the security of Ring's devices.

68. As a result of Ring's unlawful, unfair, and fraudulent business practices, Plaintiff and members of the Class have a significant risk of suffering injury.

69. If Ring is permitted to continue to engage in the unfair and fraudulent business practices described above, its conduct will engender further injury, expanding the number of injured members of the public beyond its already large size, and will tend to render any judgment at law, by itself, ineffectual. Under such circumstances, Plaintiff and members of the Class have no adequate remedy at law in that Ring will continue to engage in the wrongful conduct alleged herein, thus engendering a multiplicity of judicial proceedings. Plaintiff and members of the Class request and are entitled to injunctive relief, enjoining Ring from engaging in the unfair and fraudulent acts described herein.

70. The basis for Plaintiff's claims emanated from California, where the primary decisions regarding what security measures to implement (or not) into Ring's devices occurred. Ring affirmatively instructs its users to contact Ring at an address in Santa Monica, California, with questions about "data protection."

## COUNT III

## BREACH OF IMPLIED CONTRACT

71. Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through set forth above as if fully written herein.

14

**CLASS ACTION COMPLAINT**

72.     Ring sold devices to Plaintiff and members of the Class. In exchange, Ring received benefits in the form of monetary payments. Plaintiff and members of the Class also created Ring accounts, providing Ring with their valuable personal data and, in some cases, money in exchange for upgraded subscription services.

73.     Ring has acknowledged these benefits and accepted or retained them., Implicit in the exchange of the devices for the monetary payments and the exchange of personal data for Ring accounts required to use those devices is an agreement that Ring would provide devices suitable for their purpose—providing home security— and not designed with flaws that render them vulnerable to hacking and therefore inadequate to provide safety and security.

74.     Without such implied contracts, Plaintiff and members of the Class would not have paid for and conferred benefits on Ring, but rather would have chosen an alternative security system that did not present such dire hidden safety risks or implement third party software enabling surveillance of activity within their own homes.

75.     Plaintiff and members of the Class fully performed their obligations under their implied contracts with Ring, but Ring did not.

76.     Ring breached its implied contracts with Plaintiff and the Class Members by failing to acknowledge and repair the inherent vulnerabilities in their accounts and devices and by willfully violating customer privacy interests by disclosing personal data to third parties without full disclosure or consent. These circumstances are such that it would be inequitable for Ring to retain the benefits received.

77.     As a direct and proximate result of Ring's breach of its implied contracts with Plaintiff and members of the Class, Plaintiff and members of the Class have suffered and will suffer injury.

**CLASS ACTION COMPLAINT**

## COUNT IV

## UNJUST ENRICHMENT

78.    Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through set forth above as if fully written herein, and to the extent necessary, asserts this count in the alternative to their breach of implied contract claim.

79.    Ring has profited and benefited from the purchase of its devices by Plaintiff and members of the Class.

80.    Ring has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and members of the Class did not receive products of the quality, nature, fitness, or value represented by Ring and that reasonable consumers expected.

81.    Ring has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and members of the Class.

82.    Equity and justice militate against permitting Ring to retain these profits and benefits.

83.    Plaintiff and members of the Class have a significant risk of suffering injury as a direct and proximate result of Ring's unjust enrichment and seek an order directing Ring to disgorge these benefits and pay restitution to Plaintiff and members of the Class.

## COUNT V

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

84.    Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through set forth above as if fully written herein.

85.    Ring is a manufacturer and seller, as it designed, assembled, fabricated, produced, constructed, and prepared its products (combined in one as hardware and software) before they were sold. Ring is a seller because it was a manufacturer, wholesaler, and distributor engaged in the business of selling a product for use and

16

**CLASS ACTION COMPLAINT**

resale with actual knowledge that its products contain significant flaws, vulnerabilities, and inadequate security features, and that they do not protect users' sensitive and private information.

86.     Ring impliedly warranted that its products (both hardware and software), which it designed, manufactured, and sold to Plaintiff and members of the Class, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate warnings.

87.     Ring did not effectively disclaim this implied warranty.

88.     Ring's products were defective at the time Ring sold them to Plaintiff and members of Class. Ring breached its implied warranty of merchantability, in that, among other things, its products were not safe, merchantable, and reasonably suited for the ordinary purposes for which they were sold.

89.     Ring, both directly and through authorized resellers, sold its products to Plaintiff and members of Class.

90.     Plaintiff is person whom Ring reasonably would have expected to purchase its products.

91.     Plaintiff relied upon Ring's implied warranty that the products they purchased were of merchantable quality. Yet Ring's products contain significant flaws, vulnerabilities, and inadequate security features, and they do not protect users' sensitive and private information, such that they are not merchantable and are unfit for their intended purpose of providing home security and protecting consumers' privacy in their homes.  Ring placed its products in the stream of commerce and expected them to reach consumers without substantial change in the condition in which they were sold.  Indeed, Plaintiff as purchaser of Ring's products, is a consumer who would reasonably be expected to use Ring's products and be affected by their performance without substantial change in the condition in which they were sold by Ring.

92.     Ring's products are defective such that, when used by Plaintiff and members of Class as intended and in a foreseeable and reasonable manner, they fail to provide home security and protect consumers' personal information and privacy.

93.     Ring's products did in fact fail to provide security and protect the privacy of Plaintiff and members of Class as alleged above.

94.     Ring knew or should have known of its products' defective design and/or manufacture and, as a result, that the products were dangerous and unfit for their intended use.

95.     Ring did not warn or alert purchasers or users of the foregoing defects and dangers, despite its knowledge of them.

96.     As a direct and proximate result of these failures, Plaintiff has been exposed to significant risk of sustaining injuries, damages, and loss.

97.     Ring is liable to Plaintiff and members of Class for damages caused by Ring's breach of its implied warranty of merchantability in an amount to be proven at trial.

## COUNT VI
### VIOLATION OF THE MASSACHUSETTS M.G.L. 93A
**(on behalf of the class members from the state of Massachusetts)**

98.     Plaintiff re-alleges and incorporates the allegations in Paragraphs 1 through set forth above as if fully written herein.

99.     Ring's conduct at issue here was experienced by Plaintiff and the Class Members in the state of Massachusetts and violates unfair competition law.  Ring violates equivalent unfair competition laws in remaining states nationwide.

100.     M.G.L., c. 93A, § 2 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." M.G.L., c. 93A, § 9 permits any consumer injured by a violation of c. 93A, § 2 to bring a civil action, including a class action, for damages and injunctive relief.

**CLASS ACTION COMPLAINT**

101.    As alleged more fully herein, Defendant has violated c. 93A, § 2 by selling an insecure system to Plaintiff and other Massachusetts putative class members that is susceptible to hacks. This conduct is unfair because it is harassing and annoying and invades the privacy of Plaintiff and the putative class members.

102.    Defendant constitutes unfair and deceptive conduct in violation of c. 93A, § 2.

103.    Pursuant to M.G.L., c. 93A, § 9, Plaintiff on behalf of herself and the MGL C. 93A Class, seeks an order:

a) Enjoining Defendant from continuing to engage in, use, or employ any of the unfair and/or deceptive business acts or practices set forth in detail above; and

b) Disgorging and restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive acts or practices.

104.    Plaintiff has made a written demand for relief pursuant to Massachusetts General Laws chapter 93A section 9(3) concurrent with the filing of this Complaint, thereby entitling Plaintiff and the putative class to judgment on this Count and for all damages authorized by statute.

105.    Based on the foregoing, Plaintiff and the other members of the Massachusetts Subclass are entitled to all remedies available under c. 93A, § 9, including, but not limited to, actual or statutory damages, whichever is greater, multiple damages, attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully request that this Court enter a judgment:

a)    Certifying the Class and appointing the Purchaser/Accountholder Plaintiff as Class Representatives for the Purchaser/Accountholder Class;

b)    Finding that Ring's conduct was unlawful as alleged herein;

**CLASS ACTION COMPLAINT**

c)      Awarding Plaintiff and the Class Members nominal, actual, compensatory, consequential, and punitive damages as allowed by law;

d)      Awarding Plaintiff and the Class Members statutory damages and penalties as allowed by law;

e)      Awarding Plaintiff and the Class Members restitution as allowed by law;

f)      Awarding Plaintiff and the Class Members pre-judgment and post-judgment interest as allowed by law; and

g)      Awarding Plaintiff and the Class Members reasonable attorneys' fees, costs, and expenses.

Dated: March 10, 2021

DEVLIN LAW FIRM, LLC

By: */s/ Deepali A. Brahmbhatt*
Deepali A. Brahmbhatt
Email: dbrahmbhatt@devlinlawfirm.com
3120 Scott Blvd. #13,
Santa Clara, CA 95054
Telephone:   (650) 254-9805

Timothy Devlin (*pro hac vice* pending)
Email: tdevlin@devlinlawfirm.com
Robert Kiddie (*pro hac vice* pending)
Email: rkiddie@devlinlawfirm.com
Robyn Williams (*pro hac vice* pending)
Email: rwilliams@devlinlawfirm.com
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

*Attorneys for Plaintiff,*
*Catherine Foster, on behalf of herself and all others similarly situated*

**CLASS ACTION COMPLAINT**

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests a jury trial of all issues in this action so triable.

Dated: March 10, 2021

**DEVLIN LAW FIRM, LLC**

By: */s/ Deepali A. Brahmbhatt*
Deepali A. Brahmbhatt
Email: dbrahmbhatt@devlinlawfirm.com
3120 Scott Blvd. #13,
Santa Clara, CA 95054
Telephone:   (650) 254-9805

Timothy Devlin (*pro hac vice* pending)
Email: tdevlin@devlinlawfirm.com
Robert Kiddie (*pro hac vice* pending)
Email: rkiddie@devlinlawfirm.com
Robyn Williams (*pro hac vice* pending)
Email: rwilliams@devlinlawfirm.com
Devlin Law Firm LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010

*Attorneys for Plaintiff,*
*Catherine Foster, on behalf of herself and all*
*others similarly situated*

**CLASS ACTION COMPLAINT**